UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER THOMSON,

          Plaintiff,

Case No. 1:11-cv-1287

Hon. Gordon J. Quist

v.

ALFRED JONES, *et al.*,

          Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant "Dr. Gordon's Motion to dismiss" (docket no. 103) and defendant "Dr. Whitely's Motion to dismiss and for summary judgment" (docket no. 106). Both motions are unopposed.

        **I.**      **Background**

Plaintiff filed this action in the United States District Court for the Eastern District of Michigan. *See* Compl. (docket no. 1). The action was transferred to the Western District, where the court granted plaintiff's request to proceed *in forma pauperis* and ordered service of the complaint. *See* Orders (docket nos. 4, 7 and 8). Plaintiff's complaint named the following defendants: Alfred Jones, administrative assistant for the MDOC's Southern Region Health Care Unit; RN Bryan Deeren; RN Jody LeBarre; and Correctional Medical Services (CMS). Amend. Compl. at p. 1 (docket no. 22); Attachments to Amend. Compl. (docket no. 22-3 at pp. 16-18). Plaintiff's complaint also named four unknown defendants (unknown parties nos. 1, 2, 3 and 4), which plaintiff also referred to as: "TLC doctors"; "Duane Waters Health Care doctor"; "Van Buren

County Jail doctor"; "Kalamazoo doctor (sent by Van Buren doctor)."  *Id.*  Plaintiff filed an amended complaint, claiming that defendants were deliberately indifferent to his serious medical needs "resulting in the blindness of his left eye."  *See* Amend. Compl. at p. 14 (docket no. 22).

The Court previously summarized plaintiff's claims as follows:

> On or about March 20, 2010, plaintiff experienced blurry vision while at the Van Buren County Jail.  *Id.* at p. 5.  On or about April 10, 2010, plaintiff saw a doctor at the jail.  *Id.*  On or about April 12-17, 2010, Van Buren County sent plaintiff to a specialist in Kalamazoo, who diagnosed plaintiff with a virus, gave him two medications and advised plaintiff that he should see results from the medications (eye drops) within three days.  *Id.*  The eye pain worsened over the next three days and plaintiff experienced headaches.  *Id.*  Another appointment was made with the specialist in Kalamazoo for April 21, 2010, but plaintiff was unable to attend it because he was transferred to the Charles Egeler Reception and Guidance Center in Jackson, Michigan.  *Id.*  Three days later plaintiff's "eyesight went black in his left eye."  *Id.*  On May 14, 2010, a nurse sent plaintiff to the Duane Waters Health Center, where a doctor saw blood in his eye and thought he might have an infection.  *Id.*  Plaintiff was sent to Jackson TLC, "a subcontract generalized health care facility."  *Id.* at p. 6.  The health care personnel at TLC "wanted to operate" on plaintiff's eye.  *Id.*  Plaintiff was transferred to Ionia Correctional Facility (ICF).  *Id.*  Plaintiff was sent back to Jackson TLC at least three times.  *Id.*  On August 12, 2010, plaintiff had surgery performed at TLC, where he was told by a doctor that there was a torn retina in his eye.  *Id.*  Plaintiff kited and spoke to a doctor at ICF to get more help "to no avail."  *Id.*  At this time, plaintiff was still in pain and "totally blind in his left eye."  *Id.*

> Plaintiff contends that because of his loss of eyesight, he is a disabled individual under the Americans with Disabilities Act (ADA).  *Id.*  Because of this disability, along with his lack of a GED or high school diploma, plaintiff contends that the MDOC's failure to assist him in writing grievances, and to provide him with accommodations, is a *prima facie* violation of his constitutional rights.  *Id.*  It would appear that plaintiff is alleging a claim against the MDOC under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  *See generally, Mingus v. Butler*, 591 F.3d 474, 481-84 (6th Cir. 2010) (discussing Title II of the ADA in the context of prisoner litigation).  Plaintiff has apparently included these allegations regarding the ADA to explain why he failed to properly exhaust his administrative remedies to Grievance Nos. ICF 1007-1827-12E1 (no. 1827) and No. ICF 2011-02-0451-12Z3 (no. 451).  *Id.* at pp. 7-8.

>    Plaintiff's amended complaint listed the following claims: deliberate indifference to his medical needs for failing to provide an immediate response to his vision problems and bureaucratic delays to the authorization of medical care (8th Amendment violation); ADA violation for failure to provide plaintiff with auxiliary aids and services necessary to fulfill his exhaustion requirements prior to filing this action; violation of "his 1st Amendment and 6th and 14th Amendment Due Process and Confrontation rights when the M.D.O.C., failed to provide any accommodation for his sight disability . . . [which] jeopardized his access to, and full participation in, the grievance system";  the Van Buren County Jail's policy of transferring prisoners who require obvious medical care to the MDOC exhibited deliberate indifference to plaintiff's serious medical needs; Van Buren County "failed to adequately train police officers and medical personnel in determining whether detainees needed immediate medical care"; negligence under Michigan law; and a state tort of reckless and callous disregard to plaintiff.  *Id.* at pp. 9-14.  Plaintiff seeks compensatory and exemplary damages in excess of $1,000,000.00.  *Id.* at pp. 14-15.

Report and Recommendation at pp. 2-4 (docket no. 70) (footnote omitted).

In an order entered on March 22, 2013, the Court dismissed all defendants except for the four unknown parties.  *See* Memorandum Order (docket no. 78).  The Court subsequently dismissed plaintiff's claims against two of these defendants, referred to as unknown party no. 2 and unknown party no. 3.  *See* Order (docket no. 101).  The Court directed service on the two remaining defendants, which plaintiff identified as "Dr. Gordon" (unknown party no. 1) and "Kimberly A. Whitely, O.D." (unknown party no. 4).  *See* Order (docket no. 100).  Dr. Gordon and Dr. Whitely have filed dispositive motions.

### II. Defendants' dispositive motions

#### A. Legal Standard

Dr. Gordon's motion is styled as a "motion to dismiss."  *See* Motion (docket no. 103 at pp. 1-2).  However, the supporting brief  seeks both dismissal under Fed. R. Civ. P. 12(b)(6) and summary judgment under Fed. R. Civ. P. 56.  *See* Brief (docket no. 103 at pp. 2-22).  Dr. Whitely's

3

motion seeks dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)[1] and Fed. R. Civ. P. 56. *See* Motion (docket no. 106). It is unclear as to which portions of these awkwardly prepared motions seek relief under Fed. R. Civ. P. 12(b)(6) and which portions seek relief under Fed. R. Civ. P. 56. However, it is clear that both defendants rely on affidavits to support their motions. Under these circumstances, the Court will review both motions as brought pursuant to Fed. R. Civ. P. 56.

Under Fed. R. Civ. P. 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[1] The Court notes that Dr. Whitely's motion refers erroneously refers to Fed. R. Civ. P. 12(b)(6) as Fed. R. Civ. P. 26(b)(6).

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Both of defendants' motions are unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B. Plaintiff's federal claims

Plaintiff has alleged that in April, May and August, 2010, unnamed specialists or doctors were deliberately indifferent to his serious medical needs in violation of his constitutional rights and committed state law torts by providing negligent medical treatment and acting with "reckless and callous disregard to plaintiff," when they treated a torn retina in his left eye. Plaintiff later identified defendants Dr. Gordon and Dr. Whitely as two of these specialist or doctors.[2]

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any

---

[2] The Court notes that plaintiff's amended complaint also alleged violations of the ADA and his due process rights. However, these claims were directed at the MDOC and Van Buren County.

5

right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Both Dr. Gordon and Dr. Whitely have submitted uncontested affidavits denying any involvement in plaintiff's medical care. In her affidavit, Dr. Gordon stated that she is a medical doctor specializing in ophthalmology. *See* Dr. Gordon Aff. at ¶ 2 (docket no. 103-4). Dr. Gordon further stated that, contrary to plaintiff's allegations, "she was not involved, either directly or indirectly, with the care of Plaintiff during July, August or September 2010, including the surgery of August 11, 2010." *Id.* at ¶ 4.

In her affidavit, Dr. Whitely stated that she is an optometrist licensed to practice in the State of Michigan. *See* Dr. Whitely Aff. at ¶ 2 (docket no. 107-1). In addition, Dr. Whitely stated that she "did not examine or treat Mr. Thomson in April, 2010, as alleged in the amended complaint." *Id.* at ¶ 4. Dr. Whitely further stated that "although Mr. Thomson has not alleged that I examined or treated him during the months of May, June, July or August, 2010, I can also stated unequivocally that I did not examine or treat Mr. Thomson during those months," that during that time she was a student at the Michigan College of Optometry, that she did not participate in any clinical program until the summer of 2011 which was "long after the events alleged in the amended complaint," that she did not graduate from the Michigan College of Optometry until May, 2012, and that she was not licensed to practice optometry until June 12, 2012. *Id.* at ¶¶ 5-7.

Plaintiff's claims against Dr. Gordon and Dr. Whitely are without foundation. The undisputed record establishes that neither Dr. Gordon nor Dr. Whitely treated plaintiff during the dates alleged in the amended complaint. Indeed, Dr. Whitely was not even licensed to practice optometry until June 2012, approximately two years *after* plaintiff received his treatment in 2010.

In short, there is no factual basis to support plaintiff's claims that these two defendants were deliberately indifferent to plaintiff's serious medical needs as alleged in the amended complaint. Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claim.

### C. Plaintiff's state law claims

Finally, to the extent that plaintiff claims that defendants committed medical malpractice under state law, his claims fail. Dr. Whitely points out that plaintiff failed to comply with at least two statutory prerequisites for filing a medical malpractice action in Michigan, i.e., a notice of intent under M.C.L. § 600.2912b(1) and an affidavit of merit under M.C.L. § 600.2912d. *See* Dr. Whitely's Brief at pp. 5-8 (docket no. 107). However, it is unnecessary to address these procedural issues, because it is undisputed that neither Dr. Gordon nor Dr. Whitely treated plaintiff during the times alleged in the complaint. Accordingly, defendants are entitled to summary judgment on plaintiff's state law claims.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Gordon and Dr. Whitely's motions for summary judgment (docket nos. 103 and 106) be **GRANTED** and that this action be **TERMINATED**.

Dated: August 14, 2014  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).